JAMES McCREARY *vs.* BENJ. McCREARY.—*June,* 1833.

In an action of debt to recover the amount of a single bill, due in 1824, the defendant pleaded by way of set-off, a claim for various articles sold and delivered; and upon the trial, proved a lease of land by him to the plaintiff, dated in 1830; in which the plaintiff covenanted to pay the defendant a certain annual sum for life, &c. and to pay all claims and demands existing against the defendant at the date of the lease. The defendant also proved an appraisement made at the request of the parties, of various articles of personal property, (which the appraisers certified the plaintiff was to take as his property at the valuation;) that such articles were delivered to the plaintiff at the valuation; and that the lease, appraisement and delivery were made at the same time. The plaintiff then proposed to prove a verbal agreement between him and defendant, that the value of this property should be applied by the plaintiff to the payment of the outstanding debts of the defendant. The County Court rejected the evidence, but this court reversed that decision, and HELD that as the appraiser's certificate did not show in what manner the property valued was to be paid for, parol evidence was admissible to ascertain that fact.

Parol evidence is admissible in cases of written contracts, to prove any collateral, independent fact, about which the written agreement is silent; such proof is perfectly consistent with, and does not in the least tend to contradict, vary or explain the written instrument.

In an action of debt upon a single bill, where the issue was joined upon the defendant's plea in bar of a sale to, and a claim for the hire and use of various articles of personal property against the plaintiff, evidence which shows a delivery of such personal property by the defendant to the plaintiff, in consideration of the plaintiff's agreeing to pay all the defendant's debts is not admissible; such an agreement is equivalent to accord and satisfaction of the debt sued for, and ought to be so pleaded.

APPEAL from *Harford* County Court.

This was an action of *Debt,* instituted on the 5th of August, 1830, by the appellant against the appellee, on a single bill, dated October the 7th, 1824, for $172. 79.

The pleadings in the cause are fully set out by the judge who delivered the opinion of this court.

1. At the trial, after the plaintiff had read to the jury the single bill upon which the action was brought, the defendant read a deed to which the plaintiff and himself were parties, dated May 17th, 1830, by which the defendant *Benjamin,* demised to the plaintiff a tract or parcel of land, during the life-time of the defendant, with the appurtenances

belonging to the same. In consideration whereof, the plaintiff covenanted and agreed to pay the defendant $20 per annum during his life, to furnish him and his wife a comfortable support; and to pay all claims and demands existing against the defendant at the date of the said deed, &c. And for the performance of the respective covenants of the parties, they bound themselves each to the other in the sum of $300 current money. And the defendant also read in evidence to the jury, a schedule and valuation of various articles of personal property, amounting in the whole to $178, annexed to which was the following memorandum.  " The 17th of May, 1830; be it remembered, that *Benjamin McCreary* and *James McCreary*, both of *Harford* county, and State of *Maryland*, having called on us the subscribers to value the horses, &c. of the said *Benjamin McCreary*, which the said *James* is to take, hold and possess as his property, and only use at the above valuation. In witness whereof, we have hereunto subscribed our names, the day and date above written. *James Deaver. James Montgomery.*" And proved that the articles contained in said schedule, were delivered over at said valuation to the plaintiff, and that the lease or covenants were executed, and appraisement made, and property delivered over at the same time. The plaintiff then offered to prove by the appraisers, that at the time the property in the schedule mentioned, was appraised and delivered to the plaintiff, it was agreed between the plaintiff and defendant, that the value of said property should be applied by the plaintiff to the payment of the outstanding debts of the defendant. The defendant objected to the admissibility of this testimony, and the court (Archer, Ch. J., and Kell, A. J.) sustained the objection, and rejected the proof. The plaintiff excepted.

2. The defendant in addition to the evidence in the first exception, which is made a part of this, offered to prove by a competent witness, that he heard the plaintiff say, some-time about the 1st of June, after the execution of the above mentioned covenant, that he had received the defen-

dant's farm and personal property, on an agreement that he should maintain his father, the defendant, and his mother, for the use of said property, and to pay $20 per year on account of the stock and other personal property. He the plaintiff was to pay all his father's debts for the use thereof; and if the defendant, his father, should die shortly after that agreement, that the property appraised by *Montgomery* and *Deaver*, was to be retained by him, and to stand in bar between him and his father. The plaintiff thereupon prayed the court to direct the jury, that if they believed the testimony of the witness, the plaintiff is entitled to recover. The court refused this direction, and instructed the jury that if they should believe from the evidence, that the plaintiff was to have the use of the personal property, upon an agreement to pay the debts of his father, the defendant, and that the debt which is the cause of action in this cause, was included among those to be paid, that then the plaintiff is not entitled to recover, but if the jury believe that it was not to be thus paid and settled, but was intended to be excluded from the number of those to be paid, that then, the plaintiff is entitled to recover. The plaintiff excepted.

3. The defendant then, in addition to the evidence in the preceding exceptions, proved by two witnesses, that the plaintiff said, that various articles of personal property, other than those appraised as aforesaid, were delivered by the defendant to the plaintiff, at the same time, which he told one of the witnesses he declined to have appraised ; and proved that the plaintiff told another of the witnesses, that he had taken the whole of the personal property of the defendant, and was to pay all his debts, and particularly the debt due to himself was to be discharged.

The plaintiff then prayed the court to direct the jury, that if they believed from the whole evidence in the cause, that the goods given by the defendant to the plaintiff, were given under a special agreement, that the said plaintiff should pay all the defendant's debts, including the demand

of the plaintiff in consideration of said property, that then the agreement was not admissible in evidence to support the issue on the part of the defendant under his pleas of set-off, which opinion, the court (Kell, A. J.) refused; but directed the jury, that if they find it was agreed between the plaintiff and defendant, that the defendant should deliver to, and the plaintiff receive the personal property spoken of by the witnesses, and in consideration thereof, that the plaintiff would pay the other debts of the defendant, and that the debt now sued for, should also be thereby discharged, and that the said property was delivered accordingly, that then such receipt of the property by the plaintiff, is admissible in support of the issue on the part of the defendant.   The plaintiff excepted.

4. After the testimony detailed in the preceding bills of exception, which is to be considered as part of this, had been given, the plaintiff prayed the court to direct the jury, that if they believe the goods given by the defendant, under an agreement that the plaintiff should pay defendant's debts, were not equal in value to the plaintiff's demand, that then the said goods were only a set-off to the extent of the value of said goods.   The court (Kell, A. J.) refused this instruction, but was of opinion, and so directed the jury, that if they find the agreement to have been made between the parties, which is mentioned in the *third* exception, and the delivery and acceptance of the property under it as therein stated, that then, such acceptance thereof by the plaintiff is admissible as a set-off to the whole of the debt now sued for.

The plaintiff excepted, and the verdict and judgment being against him, he brought the present appeal.

The cause was argued before Buchannan, Ch. J., and Earle, Martin, Stephen, and Dorsey, J,

*Learned* for the appellant, filed notes.

This is an action of debt upon a single bill, and the defence relied upon is a plea of set-off for goods sold, &c. under a

special agreement which is offered in evidence under the plea. The record presents two questions for the consideration of the court.

*First.* Did the court below err in refusing the parol evidence offered by the plaintiff, to prove for what particular purpose the goods mentioned in the schedule of appraisement were delivered? *Secondly.* Did the County Court err in permitting the *defendant* to give evidence of a *special agreement*, by which the plaintiff stipulated in consideration of certain goods delivered to him, to pay all the defendant's debts, under a *plea of set-off for goods sold?*

The first question arises upon the first bill of exceptions. The court seem to have excluded the plaintiff's testimony upon the ground, that the schedule of appraisement was the *only* evidence admissible in relation to that transaction. In this we think the court erred; without contravening the rule that parol evidence is inadmissible, where there is written our evidence was offered to prove what did not appear upon the written schedule, to wit, how the price of the goods was to be applied. It was not intended to contradict or vary the written evidence, but solely to prove a collateral matter, that the written evidence did not explain, an agreement between the parties, that the price of the goods mentioned in the schedule, was to be applied to particular objects, and what those objects were. There is a clear distinction between the cases, where the law requires the contract to be in writing, and where it does not require it. In the former case, no parol agreement can be admitted in evidence; but in the latter, a parol co-temporaneous agreement may be given in evidence. 1 *Stark. Cas.* 267. 3 *Stark. Ev.* 1049.

In this case, it is contended that the schedule cannot be considered as the written agreement of the parties, for any other purpose than the mere ascertainment of the value of the goods mentioned in it. It is not signed by the parties, and it would seem that the powers of the arbitrators, so far as they can be regarded, as the agents of the parties did not

extend beyond the mere valuation of the property.    No
other power seems to have been intended to be given them
by the parties.    The admissibility of the rest of the agree-
ment is perfectly consistent with the case in *Starkie* of
*Jeffrey vs. Walton*.    The agreement to have this property
valued, is only part of a parol agreement, embracing many
other matters bearing upon the whole transaction, which
we contend, it was competent for us to explain by parol
proof.    It was necessary that the jury should have had this
evidence, to enable them to judge of the intentions of the
parties, in relation to their whole transactions, in reference
to the case before them.    In our case, there is no law re-
quiring the sale of the goods to be in writing.    If the
whole contract in relation to the goods sold had been by
parol, it would have been obligatory.    It is difficult to
conceive how the court could regard this appraisement as a
*contract* of that character, that would exclude all parol evi-
dence in explanation of the transaction that does not appear
upon its face, and cannot be understood from its terms.    It
would indeed be strange, if such a writing would preclude
either party from shewing by other evidence, under what
agreement this appraisement was made.

In relation to the second point, a question of pleading
arises, does the evidence offered by the defendant sustain
his plea of set-off?    His plea is a *general* plea for goods
sold, &c.    His evidence is a delivery of goods under a *spe-
cial agreement*, without any evidence of the value of the
goods.    The general rule upon this subject is, that the evi-
dence must be conformable to the plea, and the same strict-
ness is required in a plea of set-off, as in other pleadings.
3 *Starkie* 1312, *et seq.*    The same rule applies to a plea of
set-off, that does to a *nar;* and the rule there, is, that if
there be a subsisting *special agreement*, the plaintiff cannot
declare generally for goods sold.    6 *Harr. and Johns.* 38.
In this case the proof is, that goods were delivered under a
special agreement, for a particular purpose ascertained by

that agreement, and the *plea* is, that goods were sold and delivered *generally*.

If such evidence were admissible, the plaintiff would be taken by surprise. He would come into court prepared to rebut the sale and delivery of the goods, when, if he had notice that a *special agreement* was to be given in evidence, he would come prepared to disprove or explain that agreement.

It is true, that there are cases where the plaintiff may abandon a special agreement, and recover on the general counts; but there he must recover upon the strength of the testimony that sustains those counts. In this case the evidence is wholly insufficient to entitle him to recover upon the general counts.

The rule, it is believed, is universally true, that where the special agreement is abandoned, and the plaintiff goes upon the common counts, he must show the *value* of the goods, &c. as the case may be. In short, he must give all the evidence necessary to sustain a *quantum valebat*, or *quantum meruit*. How would this evidence stand in a *quantum valebat?* There is no evidence of value whatever. Suppose the defendant had a right to abandon the *special agreement* when we sued him, and to set up the goods sold and delivered as a set-off generally; still he would be compelled to prove, not only the delivery of the goods, but their value. He could not look to the special agreement, to fix the value of the goods, and abandon it as to all other purposes. This rule seems to have been established by this court, in the case 6 *Harr. and Johns.* 38, before referred to; that when there is a subsisting special agreement the parties must rely upon it. In the case at bar, according to the proof, the special agreement *is* subsisting, and the defendant is *obliged* to rely upon it, in fixing the value of the goods. He gives it in evidence, and he should have pleaded it. Without the special agreement it does not appear that the goods delivered were worth any

thing.   The agreement shows, that the plaintiff agreed to
pay all the defendant's debts for these goods.   This may
give a vague idea of their value, but is only ascertained
through the agreement, uncertain as it is, and we think
even this evidence is clearly inadmissible under the defen-
dant's plea.

All the reasons that support the necessity of a special
nar upon a special agreement, apply with equal force and
propriety to a plea of set-off.

*Gill*, for the appellee contended,

That the County Court did not err in rejecting the
plaintiff's proof, as offered in the first bill of exceptions.
The appellant's counsel supposes that the proof was admis-
sible, to show how the property, mentioned in the appraise-
ment, was to be paid for.   If the defendant's case had rest-
ed upon the appraisement alone, the proposed evidence
would have been competent.   But the lease is an important
part of the case.   There the plaintiff had agreed in con-
sideration of the lease, to pay all claims and demands exist-
ing against the defendant at its date, 1830.   The bond sued
on, was dated in 1824, of course the agreement in the lease
covered that debt.   The plaintiff agreed to pay it by the
lease; by that it was extinguished.   Now the proof offered,
in effect, abandons that stipulation, and proposes to show
that for another consideration, the plaintiff must pay the de-
fendant's debts.   The lease shows that the land was the
equivalent for paying the debts; the parol proof abandons
that ground, and insists that the personal property was the
equivalent.   What is this in effect but interpolating an ad-
ditional clause in the lease, denying that *all* the defendant's
debts were to be paid in consideration of the demise of the
land, and declaring that the plaintiff was to receive some-
thing else from the defendant, to pay a part of his debts?  The
appraisement was naturally silent upon this point, because
the defendant seeing, that for the land, *all* his debts were to
be paid, would expect, of course, payment for the personal

property, the true reason for the valuation. If this view is correct, the plaintiff has no claim, and the cause need not be remanded. Upon the other questions, it is conceded, that it would be difficult to maintain, that the special agreement is competent evidence under the present state of the pleadings.

STEPHEN, J., delivered the opinion of the court.

This was an action of debt instituted in *Harford* County Court, by the appellant against the appellee, to recover a sum of money due on a single bill. The defendant pleaded as a set-off, that the plaintiff was indebted to him in several sums of money of a larger amount, for sundry goods and chattels before that time sold and delivered, for money had and received, for money lent and advanced, for the use and occupation of a certain messuage and land thereunto appertaining, and upon an account stated; and also for the use and possession of several horses, cows, carts, and other necessary farming utensils. To this plea the plaintiff replied, that he was not indebted to the defendant in manner and form as the defendant had alleged; and also that at the time of the impetration of the original writ in this cause, the defendant was indebted to the plaintiff in several large sums of money, for money paid, laid out, and expended, for the use of the defendant and at his special instance and request, for goods and chattels sold and delivered, for work and labor, and for sundry matters properly chargeable in account, which sums of money, or so much as may be equal to defendant's claim, he prays may be discounted out of the money mentioned in said pleas. To this replication, the defendant rejoined the plea of limitations. Upon the trial of the cause, after the plaintiff had read in evidence to the jury the single bill, the defendant offered in evidence, a certain deed of covenant entered into between him and the plaintiff, containing sundry stipulations, and among the number, one to pay all debts and claims that may be standing against him, the said *Benjamin,*

at the date thereof; and also offered in evidence a schedule, and valuation of sundry articles of personal property; at the foot of which was the following statement, made and signed by the appraisers. " The 17th of May, 1830. Be it remembered, that *Benjamin McCreary*, and *James McCreary*, both of *Harford* county and State of *Maryland*, having called on us the subscribers to value the horses, cattle and hogs of the said *Benjamin McCreary*, which the said *James McCreary* is to take, hold and possess as his property, and only use at the above valuation. In witness whereof, we have hereunto subscribed our names, this day and date above written," and proved that the articles contained in said schedule, were delivered over at said valuation to the plaintiff, and that the lease or covenants were executed, and appraisement made, and property delivered over at the same time. The plaintiff then offered to prove by the appraisers, that at the time the property was appraised and delivered over to him, it was agreed between the plaintiff and defendant, that the value of said property should be applied by the plaintiff, to the payment of the outstanding debts of the defendant; to the admissibility of which evidence the defendant objected, and the court sustained the objection, and rejected the testimony as inadmissible.

Whether or not, the court below were right in rejecting the testimony so offered to be given to the jury, is the question now to be decided. The appraisers' statement amounts to nothing more than a written declaration, that they had been appointed by *James* and *Benjamin McCreary*, to value the specified property, and that *James McCreary* had agreed to take it at the valuation so made by them. In what manner this valuation was to be paid, is not stated by the appraisers. It is therefore considered that no principle of law, or rule of evidence, would be infringed or violated by the admission of parol proof, to ascertain that fact, about which the statement is perfectly silent. The articles mentioned were to become the property of *James*

*McCreary* when paid for at that valuation ; but whether they were to be paid for in money or in any other manner, is not stated. Even if this were the case of a written contract signed by the parties themselves, the authorities are clear, that parol evidence is admissible to prove any collateral, independent fact, about which the written agreement is silent ; because such proof is perfectly consistent with, and does not in the least tend to contradict, vary or explain the written instrument. Thus it is said in *Philips Ev.* 497, " though an ambiguity apparent on the face of a written instrument cannot be explained by extrinsic evidence, yet where a question arises, as to the general intention of the parties, concerning which, the instrument is not decisive, it has been held that proof of independent facts, collateral to the instrument, may be properly admitted. Thus in the case of *King vs. Laindon,* where on a question between two parishes, respecting the settlement of a pauper, it appeared that the pauper agreed to serve a person three years to learn the business of a carpenter, and evidence was admitted at the sessions, that at the time of making the agreement, the pauper agreed also to give a sum of money as a premium to be taught the trade; that he paid the money, and that he was not to be employed, nor was he employed in any other work, than that of a carpenter; the court of *Kings Bench* held, that the evidence was properly admitted, as it was not offered to contradict the written agreement, but to ascertain an independent fact, collateral to the written instrument, in order to explain the intention of the parties, the instrument being in some measure equivocal." So, in 3 *Stark. Ev.* 1047, and 1050, it is said, " it may be shown that a parol contract was made, independently, wholly collateral to, and distinct from a written one made at the same time. In such cases the parol evidence is used, not to *vary the terms* of the written instrument, but to show either, that it is *inoperative,* as an entire and independent agreement, or that it is collateral and irrelevant." And in page 1050 in a note it is stated :—"In many

McCreary *vs.* McCreary.—1833.

instances the terms reduced to writing, may constitute but a small part of the real contract. Suppose A to let a house by parol to B, for two years, and that at the time of the parol agreement, a stipulation as to the furniture is made, for convenience of calculation in writing, and that at the foot of the account is written : " B to take the furniture at the above valuation," it would be difficult to contend, that *B* would be bound to buy the furniture, although *A* refused to let him occupy the house, and that *B* would be concluded by the written part of the engagement from showing the real condition annexed to it." This court are of opinion, that the court below were right in refusing the plaintiff's prayer, but erred in the opinion and direction to the jury, given in the second exception. In that exception the defendant, in addition to the evidence offered in the first bill of exceptions, offered to prove by a competent witness, that he heard the plaintiff say sometime about the first of June, after the execution of the covenant referred to in the first bill of exceptions, that he had received the defendant's farm and personal property, on the agreement that he should maintain the father and his mother for the use of said property, and to pay $20 per year on account of the stock and other personal property ; he the plaintiff was to pay all his father's debts for the use thereof ; and if the defendant, his father, should die shortly after that agreement, that the property appraised by the appraisers, was to be retained by him, and to stand in bar, between him and his brother. Whereupon the plaintiff prayed the direction of the court to the jury, that if they believed the testimony, the plaintiff is entitled to recover ; which direction the court refused to give, but directed the jury, that if they should believe from the evidence that the plaintiff was to have the use of the personal property, upon an agreement to pay the debts of his father, the defendant, and that the debt which is the cause of action in this case was included among those to be paid, that then the plaintiff is not entitled to recover ; but if the jury believe, that it was not to be thus paid and

settled, but was intended to be excluded from the number of those to be paid, that then the plaintiff was entitled to recover.

In this opinion we think the court below erred in their direction to the jury, because the defendant was not entitled to avail himself of the benefit of the evidence given in this exception, under the pleadings in this cause. The agreement, to prove which the evidence was offered, being the proper subject of a plea in bar, by way of accord and satisfaction, and not admissible in evidence under the issues in this cause. For the same reason, we think the court below erred in the opinion delivered by them in the third exception. The agreement therein offered to be proved, being properly pleadable as aforesaid in bar, and not admissible in evidence under the pleadings in the cause. We also think that the court below were right in refusing the plaintiff's prayer, but erred for reasons similar to those already expressed in the direction given by them to the jury in the fourth exception, and reverse their judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.