# EDWIN M. FLEISCHMANN ET AL.

### vs.

# J. EVERETT CLARK.

*Assumpsit—Pleading—Condition Precedent to Contract—Evidence—Examination of Witness—Asking Legal Opinion—Taking Papers to Jury Room.*

A special plea in assumpsit having asserted a modification of the original contract between the parties, a replication thereto, asserting that such modification was subject to an unfulfilled condition precedent, was properly upheld as against a demurrer thereto, the matter asserted in the replication being such as could be given in evidence under the general issue plea, on which issue had already been joined.                    p. 174

A witness testifying to certain negotiations was properly allowed to be asked whether a certain proposal made to him was "ever consummated," the question being such that the answer might be either admissible as a statement of fact or inadmissible as a statement of law.                    p. 174

There being an issue as to whether the reduction to writing of certain terms of agreement was a condition precedent to their legal effectiveness, and this never having been done, it was proper to ask one of the parties whether he considered either himself or the other parties not to be bound thereby until this was done.                    p. 175

There was no prejudicial error in allowing plaintiff to introduce an exhibit setting forth in detail the amount of his claim and how it was arrived at, it having been made up from a special plea filed by defendants, which plea might at any time have been read to the jury.                    p. 176

A question asked of plaintiff as to whether there was anything to prevent him from selling his one-third interest in a certain purchase was properly excluded, its obvious purpose being to secure his opinion on a question of law.                    p. 176

A prayer which, while setting out with particularity much of the evidence, entirely or partially omitted part of the facts in evidence which might influence the jury, was properly rejected.                                                    p. 177

Error cannot be predicated upon the court's refusal to allow the jury to take with them upon their retirement a special plea filed by defendants in the nature of a plea of recoupment. p. 177

*Decided November 18th, 1920.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Allan H. Fisher,* with whom were *Fisher & Fisher* on the brief, for the appellants.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the court.

The record in this case brings up for review the rulings of the Superior Court of Baltimore City in a case where J. Everett Clark was plaintiff and Edwin M. and Albert J. Fleischmann were defendants.

The cause of action arose out of a purchase in February, 1918, of 350 barrels of Gwynnbrook whisky, the agreement between the parties to the suit being a verbal one merely.

Under the terms of that agreement the 350 barrels were to be bought at $1.20 per gallon, and the anticipated profit was to be looked for from a resale of it at an advanced price. Apparently the original agreement was entered into between the plaintiff and Edwin M. Fleischmann only. Fleischmann was to finance the deal and Clark was to attend to the selling of the whisky so bought and the profit to be equally divided

between Clark and Fleischmann. The participation of Albert J. Fleischmann was apparently of later date.

The expenditure for the purchase was to be shared equally between the parties to the agreement, but before the first payment was made there was a modification of the terms upon which it was to be bought from the original vendors, S. Grabfelder & Co. of Louisville, Kentucky, under which ten per cent. of the purchase price was to be paid cash, and the balance in six months.

The ten per cent. was paid by Fleischmann, although the plaintiff did not pay his full contribution to the price until somewhat later. As the month of August rolled around, when the second and final payment was to become due, the plaintiff found himself unable to meet his share, and he asked Edwin M. Fleischmann to advance the money for him. It was apparently about this time that Albert J. Fleischmann came into the deal, though there is evidence from which a jury might infer that he had been a party to it before the first ten per cent. was actually paid. However this may have been, there undoubtedly was upon the part of one or both of the Fleischmanns a demand that there should be a modification of the original agreement in regard to the division of the profits, which, according to the Fleischmanns, was to the effect that whatever profit was realized on a sale of the whisky at prices between $1.20 a gallon and $1.50 a gallon should go to them, they agreeing to guarantee to Clark a sale price of $1.50 per gallon; on all excess above $1.50 a gallon there was to be a division of the profit between the three parties, either into equal thirds, or five-sixths to the Fleischmann brothers and one-sixth to Clark. The attempt thus made to tie to the original agreement a new and different agreement between the parties inevitably led to a confusion of recollection as to the exact terms and nature of this agreement, so-called, of August, 1918.

It was, therefore, proposed that this should be put in writing for the purpose mainly of avoiding any confusion or un-

certainty thereafter. The putting of it in writing was entrusted to Mr. Albert J. Fleischmann, and it is claimed by the plaintiff that this constituted a condition precedent to any agreement. That is denied by the appellants, who have resisted Mr. Clark's suit, upon the theory and ground that a perfectly valid, though oral, agreement had been entered into, and that the writing could neither add to nor detract from the agreement as made in Mr. Edwin M. Fleischmann's office.

The record presents eight bills of exception, of which the third and sixth were not dwelt upon at the argument of the case, but were in effect abandoned.

The first question to consider is not a part of any of the bills of exception, but arises in this manner. To the declaration of the plaintiff there were filed, as the first and second pleas, the general issue pleas in an action of assumpsit. There was also a third plea, in the nature of a special plea, which was characterized in the brief as a plea in confession and avoidance, and in the oral argument sometimes as a plea of set-off, and sometimes as a plea of recoupment. But since the Act of 1914, Chapter 393, it is of no practical importance in which light this plea is viewed. In the replication to this plea the plaintiff set up the theory of a condition precedent, and to this a demurrer was filed, which demurrer was overruled. No valid objection can be maintained to this action of the court, inasmuch as the question of a condition precedent, first set up by the replication to the special plea, could have been given in evidence under the general issue plea, on which issue had already been joined.

The first exception of the appellant was to permitting the following question to be put to the plaintiff upon his direct examination: "Well, now, was this proposal ever consummated?" Several different grounds have been assigned to show that this was error on the part of the trial court. The ruling, however, of that court upon this exception was correct. The question might have elicited a statement of facts, or a conclusion of law. That could only be told from the answer.

If the answer showed a statement of fact, it was clearly admissible; while on the other hand if the effect of it was to permit the witness to state a conclusion of law, it was as clearly inadmissible. The question was accordingly answered, and no motion was made to strike out the answer, or question and answer, and the same question was in effect asked and answered at a later stage of the proceeding without objection, and thus further consideration of it becomes unnecessary.

The second exception was to the action of the court in overruling an objection by the defendants to permitting the plaintiff to be asked the following question: "Now, Mr. Clark, did you understand that in connection with this proposal of Messrs. Fleischmann that this agreement was to be—this proposal; the terms of this proposal were to be embodied in a written contract, and until that written contract was produced and signed by both parties did you consider yourself not bound and that the other parties were not bound?"

This was a question of much importance, since it went directly to the issue whether the reduction of the agreement to writing was a condition precedent or not. The contract, so far as there was a valid and binding obligatory contract, depended upon the terms of the instrument, or oral agreement, which showed a meeting of the minds of the parties. The contract was confessedly an oral contract, and the question was thoroughly pertinent to show whether there had been or not any meeting of the minds of the parties, and thus was a question to be passed upon by a jury upon the evidence adduced before it. This action of the court was, therefore, entirely proper. This is made the more manifest by a perusal of the cross-examination of this witness, where without objection he answered practically the same question. See *Black* v. *Bank of Westminster,* 96 Md. 399; *B. & O. R. R.* v. *Deck,* 102 Md. 669; *Parks* v. *Griffith & Boyd Co.,* 123 Md. 233; *Rice* v. *Dinsmore,* 124 Md. 276; *Furness-Withy & Co.* v. *Fahey,* 127 Md. 337.

The fourth bill of exception is claimed to have been re-served to an exhibit produced in the case of the plaintiff, designated as plaintiff's exhibit No. 6, which set forth in detail the amount of the plaintiff's claim, and how it was ar-rived at. A comparison of the figures of this claim shows it to have been made up from the defendants' third or special plea, and as that plea might at any time have been read to the jury, it could have in no manner prejudiced the defend-ants that the figures were given to the jury, taken from the source already indicated.

The fifth exception was reserved to the sustaining of an objection to a question put to the plaintiff on his cross-exam-ination: "Q. Was there anything to prevent you from selling your one-third? A. Nothing except the fact that it was in connection with the whole deal. The whole deal was to-gether, and I had gone into it with him." This taken in con-nection with the context shows that the purpose of the ques-tion was to draw from the witness a statement of the witness' opinion on a question of law, and as such totally inadmissi-ble.

The seventh exception was to the ruling of the court upon the prayers, but the only ones which we are called upon specifically to consider are those offered on behalf of the defendants.

The first of these was a prayer to take the case from the jury, and render a directed verdict for the defendants. From what has already been said elsewhere in this opinion it will be clear that this prayer was inherently bad. There were a number of questions which it was the province of the jury to pass upon, as for example whether there was or was not a valid contract entered into in August, 1918, and if there was, what the terms of it were.

The second prayer was equally vicious, in that it segre-gated a single sale of whisky, out of the 350 barrels, and asked that in the event of the fact stated in that prayer being found by the jury, the verdict must be a general verdict for

the defendants. It has been so frequently decided by this Court that a prayer is fatally defective which makes this attempt, that the citation of authorities on this would be superfluous.

What has been said of the defendant's second prayer, applies equally to the defendant's third prayer.

The fourth prayer presented on behalf of the defendants was extremely prolix, and the jury would be sorely perplexed as to the verdict they should render under a prayer drawn as this one was. But it is open to a still further objection, in that while setting out with great particularity much of the evidence in the case, it entirely omitted or failed to be a full statement of all the facts testified to and which might have influenced the jury, and it was therefore properly rejected.

The eighth exception is to the refusal of the trial court to allow the jury to take with them to their room, when they retired, the third or special plea of the defendants. No error, however, can be predicated upon this refusal.

The third, or special plea, is claimed by the defendants as a plea of set-off, and if it were such, the plea might be held to amount to a declaration of the defendants' claim against the plaintiff. As already suggested this plea was in its nature one of recoupment, rather than set-off, and it must, therefore, in this exception be considered in that light.

In his volume on *Practice,* Section 328, Mr. Poe says, that the jury may "take with them the pleadings and the court's instructions, but no other papers whatever, except by consent of counsel. A violation of this rule will cause their verdict to be set aside."

In a note to this section that author cites the cases of *Ingalls* v. *Crouch,* 35 Md. 296; *Moore* v. *McDonald,* 68 Md. 333; *Hitchens* v. *Frostburg,* 68 Md. 100; and adds the further note that "in Baltimore City the practice is to give to the jury the *declaration only,* and the court's instructions." In Section 328-A, Mr. Poe says that there is no statute on the subject and the matter rests largely in the discretion of

the court.   And he again cites the *Moore case* and the *Hitchens case* already mentioned.   In the *Moore case,* which was a caveat to a will, the jury asked for the original will, and this was refused, and the ruling making the refusal was sustained by this Court.   In the *Hitchens* and *Frostburg cases* it was held that the giving of papers to the jury was discretionary with the trial court, and was not reviewable upon appeal.   The rule as stated by Mr. Poe is also laid down in *Thompson on Trials,* Section 2582, where it is said: "It is the duty of the court to state the issue and it is error to refer jurors to the pleadings to find what the issues are: it would seem on principle to be a proper rule of practice not to send the pleadings out with the jury.   But the general practice is believed to be to the contrary," citing *State* v. *DeLong,* 12 Iowa, 453, and *Wright* v. *Rogers,* 2 N. J. L. 546.

The judgment appealed from will accordingly be affirmed.

*Judgment affirmed, with costs.*