## RAIMONDI v. STATE OF MARYLAND

[No. 281, September Term, 1971.]

*Decided April 4, 1972.*

*Motion for rehearing filed May 1, 1972; denied May 8, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Leon H. A. Pierson* and *Ronald L. Spahn* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edward F. Borgerding, Assistant Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Raimondi, convicted at a jury trial in the Criminal Court of Baltimore of attempting to bribe a member of the General Assembly in contravention of Code (1957, 1967 Repl. Vol.) Art. 27, § 23, appealed to the Court of

Special Appeals, which affirmed the judgment, *Raimondi v. State,* 12 Md. App. 322, 278 A. 2d 664 (1971). We granted certiorari in order that we might consider whether the trial court erred when it permitted transcripts of electronic recordings to be taken into the jury room.

The transcripts were of four recorded conversations between Raimondi and State Senator John J. Bishop, Jr., of Baltimore County. One conversation took place in Senator Bishop's car and one in Raimondi's office. The other two were telephone conversations.

Although the recordings were intelligible, when played back on the same device which had recorded them they were at times nearly inaudible. For this reason the State had typewritten transcripts made of each recording. When the tapes were played back in the courtroom, each juror was given a copy of the transcripts in order to follow the recording more closely. At the end of the State's case, the transcripts were admitted in evidence and parts of them were read to the jury and referred to during argument, in each instance over Raimondi's objection. At the conclusion of the case, the jury was permitted to take the transcripts to the jury room, again over Raimondi's objection.

It is not contended that the transcripts are inaccurate, or that the conversations which were recorded did not take place. Raimondi argues that the trial court erred in permitting the transcripts to go to the jury room because the action was not sanctioned by Maryland Rule 558 and because the jury's possession of the transcripts unduly emphasized their content, with consequent prejudice to the defendant.

Rule 757 makes Rule 558 applicable to criminal cases. Rule 558 provides, in part:

"a. *In Court's Discretion.*

Upon retiring for deliberation, the jury may take with them into the jury room such of the pleadings, granted prayers or written instruc-

tions, and *exhibits which have been received in evidence,* as the court may deem necessary for a proper consideration of the case. (Emphasis supplied)

"b. *As of Right—Notes.*

The jury may also take with them notes of the testimony or other proceedings taken by themselves but none taken by any other person.

\* \* \*

"d. *Exception.*

A deposition may not be taken into the jury room, except by agreement of all parties and with consent of the court."

Raimondi argues that the transcripts were either notes taken by another person, excluded by Rule 558 b or should be likened to a deposition, which could not be taken to the jury room under Rule 558 d without his consent. What these arguments overlook is that the transcripts were neither the notes of another nor depositions, but exhibits, which Rule 558 a permits to be taken to the jury room, in the discretion of the trial judge.

Raimondi finds comfort in the broad-brush language found in two early cases, *Ingalls v. Crouch,* 35 Md. 296, 298 (1872) and *Moore v. McDonald,* 68 Md. 321, 333, 12 A. 117 (1888). The first held that permitting the jury to take into the jury room the plaintiffs' affidavit filed in support of their declaration was reversible error. In *Moore v. McDonald,* a caveat case, our predecessors noted that the original will under attack could be taken into the jury room only with the consent of the parties, and not as a matter of right.

Raimondi's argument that Rule 558 did little more than enunciate our prior case law is correct, but *Ingalls* and *Moore* must certainly be read in the light of the later cases. *Bell v. State,* 200 Md. 223, 227-28, 88 A. 2d 567 (1952) held that whether papers are to be given to the jury is a determination exclusively within the dis-

cretion of the trial court. *Cahill v. Baltimore,* 129 Md. 17, 25-27, 98 A. 235 (1916) held that in the absence of clear evidence of abuse of discretion, the action will not be reviewed on appeal. This was clearly the law immediately prior to the adoption of Rule 558 in 1957. *Compare* Comment, *Rule 558—What the Jury May Take to the Jury Room,* 17 Md. L. Rev. 172 (1957) *with* 2 Poe, *Pleading and Practice* §§ 328, 328A, at 299-300 (5th ed. 1925).

The apparently conflicting results reached by the courts of other states must be analyzed by comparing their statutes or case law with Rule 558. *State v. Solomon,* 96 Utah 500, 87 P. 2d 807 (1939) ; *Payne v. State,* 199 Wis. 615, 227 N. W. 258 (1929), and *State v. Wilson,* 188 Kan. 67, 360 P. 2d 1092 (1961), on which Raimondi relies, all excluded transcripts of testimony or depositions or both from the jury room. The State relies on *People v. Feld,* 305 N. Y. 322, 113 N.E.2d 440 (1953) and *People v. Ketchel,* 30 Cal. Rptr. 538, 381 P. 2d 394 (1963) which held that transcripts of recordings were admissible and on *People v. Beverly,* 233 Cal. App. 2d 702, 43 Cal. Rptr. 743, *cert. denied,* 384 U. S. 1014, 86 S. Ct. 1937, 16 L.Ed.2d 1035 (1966) where, although principal reliance was placed on a stipulation by defense counsel, transcripts of recordings were permitted to go to the jury room, because they were exhibits. The jury was also permitted to have transcripts of recordings in *United States v. Koska,* 443 F. 2d 1167 (2d Cir. 1971).

The case before us is a sibling of *Beverly* and *Koska.* A tape recording is admissible in evidence, *McGuire v. State,* 200 Md. 601, 606, 92 A. 2d 582 (1952), *cert. denied,* 344 U. S. 928, 73 S. Ct. 497, 97 L. Ed. 714 (1953) ; *Lynch v. State,* 2 Md. App. 546, 236 A. 2d 45 (1967), *cert. denied,* 249 Md. 732 (1968), as is a typewritten transcript of the recording, *McGuire, supra; Tumminello v. State,* 10 Md. App. 612, 623, 272 A. 2d 77 (1971). This would seem to be the majority view, subject to the qualification that some courts are inclined to regard a record-

ing of a confession or of inflammatory material as prejudicial to the defendant, if taken into the jury room, Annotations: *Permitting documents or tape recordings containing confessions of guilt or incriminating admissions to be taken into jury room in criminal case,* 37 A.L.R.3d 238 (1971) and *Admissibility of sound recordings in evidence,* 58 A.L.R.2d 1024, 1042 (1958).

Here we are not dealing with a confession, an admission, or material of an inflammatory character. If Raimondi could have shown that he was prejudiced, it might have been a different story. He conceded that the conversations had taken place and that the recordings had been accurately transcribed. His only complaint seems to be that some of the conversations he had with Senator Bishop had not been taped. Raimondi was given ample opportunity to fill in these gaps when he testified. The jury had before it a question of fact, whether the conversations amounted to an attempted bribery, as the State contended, or were intended to conjure up a hoax, as Raimondi viewed it. The transcripts were relevant to this issue. That the jury may not have accepted Raimondi's explanation of what he thought was the true purpose of the conversations does not mean that the jury gave undue weight to the transcripts, to his prejudice.

*Judgment affirmed, costs to be paid by appellant.*